IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LE PIZE
Q.E. MONTGOMERY,

            Petitioner,

            v.                              CASE NO. 09-3244-RDR

C. CHESTER,
et al.,

            Respondents.

**O R D E R**

On December 23, 2009, this court entered a screening Order requiring petitioner to either allege additional sufficient facts showing a denial of due process and full and proper exhaustion, or show cause why this action should not be dismissed for failure to state sufficient facts and for failure to show exhaustion of all available administrative remedies. Petitioner has since filed several documents. Having considered all materials filed in this action, the court finds as follows.

Petitioner filed his "Answer" to the court's screening Order (Doc. 10). The court tentatively finds from the materials filed by Mr. Montgomery, that he pled guilty and was convicted in the Northern District of Illinois of fraud and related charges, and was sentenced to a term of 51 months on July 13, 2006. He was confined in federal prison, and completed the Residential Drug Abuse Treatment Program (RDAP) on January 5, 2009. Ten days later, he was transferred from prison to a halfway house "to complete the mandatory maximum 180-day requirement." This 180-day period began

for him on January 15, 2009, and was to end on July 14, 2009. He alleges that he had no incidents reports during this time period. He also alleges that he received a "Certificate of 180 days Completion of After Care" on or about July 10, 2009[1]. On July 14, 2009, he "reported to his probation officer at 8:30 a.m. as required by statutory law." His probation officer had been misled to believe that petitioner had a pending incident report. Mr. Montgomery states in his response that he had completed "all requirements of (his) 18 U.S.C. § 3621(e) release" and "did believe" he was under the jurisdiction of the U.S. Probation Office as of July 14, 2009.

Mr. Montgomery was returned to prison, and is currently confined at the Federal Prison Camp in Leavenworth, Kansas. He talked to his case manager at the Camp, and was informed that he is being held under BOP Policy[2], and that his "Community Correction Manager" and Probation Officer were to blame for his "paper work being mishandled."

While petitioner's own allegations still fail to shed much light on the actual reason he was returned to prison, his exhibits are more elucidating. For example, a letter in response to his

---

[1] Petitioner has provided an exhibit (Doc. 15, Exhib H) of his "Certificate of Completion" of "the required individual and group TDAT sessions" signed on July 9, 2009.

[2] The procedures for disciplinary action are established by BOP regulation and require that an inmate be given notice of the charges and a hearing. See 28 C.F.R. § 541.17. They also allow for an inmate to be present during the hearing. Id. However, the procedures are subject to modification in the exercise of BOP discretion when institutional concerns and individual circumstances require deviation. Id. As long as a disciplinary sanction is based on some evidence, it satisfies the standard for due process. See e.g., Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985).

inquiry from the U.S. Probation Office in Illinois is attached to his "Answer" (Doc. 10, Exh. 5) and substantiates that he appeared at the U.S. Probation Office (on July 14, 2009). However, this letter also indicates he was not yet on probation at the time, and "there was no violation of your supervised release by the U.S. Probation Office." It further indicates his "release date was delayed due to (his) violating the terms of (his) 3621 E Coml. release guidelines[3]." Id. Petitioner in his initial pleadings, challenged the authority to require him to take a breathalyzer test. It thus appears he either failed or refused to take such a test prior to or on July 14, 2009, and was returned to prison as a result[4]. It also appears from his exhibits that a subsequent

---

[3] The early release date set for a federal inmate participating in the RDAP pursuant to 18 U.S.C. § 3621(e)(2)(B), is conditioned upon his successful completion of both the institutional and community transition components of the program. Mr. Montgomery obviously completed the institutional component of the treatment program, and would have received a six-month reduction in his sentence under § 3621(e) had he also successfully completed the program's community transition component prior to violating conditions. However, he was returned to a secure facility, and it may be presumed that his § 3621(e) early release date was rescinded.

[4] Petitioner claims a denial of due process. To make out a due process claim, he must assert the infringement of a protected liberty interest. A protected liberty interest may arise from either the Due Process Clause itself, or from a state or federal law. "The Constitution does not itself afford [Mr. Montgomery] a liberty interest in a reduced sentence. A convicted person has no constitutional or inherent right to be conditionally released before the expiration of a valid sentence." See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979. Mr. Montgomery does not show he had a liberty interest created by statute or regulation in continued half-way house or home-confinement placement or to release on probation. See Greenholtz, 442 U.S. at 7; Wilson v. Evans, 172 Fed.Appx. 227, (10th Cir. Mar. 22, 2006). To the contrary, 18 U.S.C. § 3621(b) gives the BOP broad discretion to "designate the place of a prisoner's imprisonment." An inmate's return to prison from a halfway house alone does not give rise to a protected liberty interest. See Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 669 (8th Cir. 1996)(return of an inmate to prison after revocation of his work release status imposed neither an atypical nor significant deprivation under Sandin because prison is "not atypical of what inmates have to endure in daily prison life."); Richardson v. Joslin, 501 F.3d 415, 420 (5th Cir. 2007); Dominique v. Weld, 73 F.3d 1156, 1159-60 (1st Cir. 1996)(Removal from a work release program does not amount to an atypical and significant hardship.").

hearing was held regarding his refusal to take the test, and he was found guilty.

The court finds from the foregoing discussion that Mr. Montgomery has still not provided sufficient facts to show his current confinement is contrary to the federal Constitution and laws. He claims he should have been released on probation on July 14, 2009, but provides an exhibit showing he was not. He claims he had no incident report that led to a conditions violation, but exhibits a "sanctioned incident" for refusal of a passive alcohol test, which was heard on August 14, 2009.

Even if Mr. Montgomery had clearly stated facts supporting viable claims under § 2241, this action must be dismissed. One thing petitioner's response does make clear is that he has not fully and properly exhausted administrative remedies on any claims. He alleges in his Response (Doc. 10) it "is undisputed that the petitioner did not pursue any administrative remedies" before filing in this court.

Petitioner argues that his failure to exhaust administrative remedies should be excused on several grounds. He asserts that full exhaustion is not required because it is "prudential" rather than a statutory prerequisite and he has raised a "substantial constitutional question." He also argues full exhaustion should be excused because it would be futile and "irreparable injury may occur without immediate judicial relief." These arguments are contrary to well-settled case law. It has long been held that exhaustion of all available administrative remedies

is a prerequisite to a federal prison inmate seeking judicial review of administrative action by the BOP and federal habeas corpus relief pursuant to 28 U.S.C. § 2241. See Williams v. O'Brien, 792 F.2d 986, 987 (10th Cir.1986); see also Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986); McClung v. Shearin, 90 Fed.Appx. 444, 445 (4th Cir. 2004)(citing Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 634 (2nd Cir. 2001); Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir. 1981)). The court repeats that administrative exhaustion is generally required for three valid reasons: (1) to allow the agency to develop a factual record and apply its expertise, which facilitates judicial review; (2) to permit the agency to grant the relief requested, which conserves judicial resources; and (3) to provide the agency the opportunity to correct its own errors, which "fosters administrative autonomy". See Moscato v. Federal BOP, 98 F.3d 757, 761-62 (3rd Cir. 1996).

There are "limited exceptions" to the exhaustion prerequisite, including "a narrow futility exception", which the Tenth Circuit Court of Appeals has "recognized in the context of petitions brought under 28 U.S.C. § 2254"; and "other circuits have recognized in the context of petitions brought under § 2241". See Ciocchetti v. Wiley, 2009 WL 4918253 (10th Cir. Dec. 22, 2009, unpublished)[5](citing see Fairchild v. Workman, 579 F.3d 1134, 1155 (10th Cir.2009); see e.g., Fazzini v. Northeast Ohio Corr. Ctr., 473 F.3d 229, 236 (6th Cir. 2006)). Such exceptions "apply only in

---

[5] This unpublished case is cited for its reasoning only, and not as precedent.

5

'extraordinary circumstances,' and [petitioner] bears the burden of demonstrating the futility of administrative review." See Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994)(citations omitted).

Petitioner's statements regarding irreparable harm and his having raised a constitutional question, in and of themselves, are not extraordinary circumstances so as to warrant waiver of the exhaustion requirement. The Supreme Court has required that even those inmates who may be entitled to immediate release exhaust their administrative remedies. Faced with the argument "that to require exhaustion of state remedies . . . would deprive a . . . prisoner of the speedy review of his grievance which is so often essential to any effective redress," that Court acknowledged that "exhaustion of . . . remedies takes time" but concluded "there is no reason to assume that . . . prison administrators . . . will not act expeditiously." Preiser v. Rodriquez, 411 U.S. 475, 494-95 (1973). Similarly, exhaustion of administrative remedies is not rendered futile simply because a prisoner believes he can obtain speedier relief in court than on administrative appeal. In reality, administrative remedies come with relatively short deadlines and should thus take less time and be more effective. In sum, petitioner has not met his burden of showing that the available prison administrative remedies would be futile or that other extraordinary circumstances exist to exempt him from the exhaustion requirement. Accordingly, the court finds this § 2241

petition must be dismissed for failure to exhaust[6].

Petitioner has filed two motions for sanctions and production of documents (Docs. 11 and 12). In these motions, he seeks sanctions against Dr. J. Wells, Residential Drug Abuse Program Coordinator; Mrs. A. Wilson, his Drug Treatment Specialist; Mr. M. Puckett, his case manager; and Mr. Swanson, camp counselor, for not providing him with copies of certain documents upon his request; and against Berry Issacson, After Care Specialist (Salvation Army Correctional Center of Chicago) for failing to send him a copy of his "Certificate of After Care Completion." This court would not condone a BOP official's refusal to provide copies of discoverable documents to a prison inmate if he had in fact been ordered to submit certain documents to a court within thirty (30) days. However, this court has not ordered petitioner to provide any documents, and has only suggested that he provide ones showing exhaustion or from relevant disciplinary or revocation proceedings. The court denies these motions as not factually or legally supported. Petitioner has also submitted a letter in which he complains that the court has not acted on several of his filings. Even if this letter were treated as a motion, it would now be denied as moot.

The court concludes that this action must be dismissed,

---

[6] While the Supreme Court has held that the failure to exhaust administrative remedies must be pleaded as an affirmative defense under the Prison Litigation Reform Act ("PLRA"), see Jones v. Bock, 549 U.S. 199 (2007), the PLRA does not apply to federal habeas proceedings. Nothing in Jones prohibits the sua sponte dismissal of a section 2241 petition on exhaustion grounds.

7

without prejudice, because Mr. Montgomery has failed to show full and proper exhaustion of the available administrative remedies.

**IT IS THEREFORE ORDERED** that petitioner's Motions for Sanctions (Docs. 11, 12) are denied.

**IT IS FURTHER ORDERED** that this action is dismissed, without prejudice, for failure to exhaust administrative remedies.

**IT IS SO ORDERED**.

Dated this 17th day of February, 2019, at Topeka, Kansas.

s/RICHARD D. ROGERS
United States District Judge
